Where the next case United States of America versus Torres and Salas at the outset let me I did not intend to require defense counsel to split 10 minutes that that was a mistake on my part so so why don't we give you eight minutes each and the government 16 and so Mr. Schneider how much time do you want of your aid for rebuttal I guess two minutes will be fine your honor okay can I go home and rewrite my my application now you can press and just make sure mr. sweat you're on the line yes your honor all right and mr. Schmidt same thing for you you can have eight minutes do you want to do six and two as well that is correct all right very good mr. Schneider you can proceed good morning my name is Jeremy Schneider and I'm representing soul colonists solace we're here today because it's our position that the district court abuses discretion by imposing a 15-year sentence on mr. colonists Alice I'm just going to address two points in my either four or six minutes depending on which which schedule I look at and the two points will be the fact that the denial of the two minor role minus two points and the addition of the two points for being a pilot or navigator mr. Schmidt my co-counsel or representing the coat co-appellant mr. Ferny Salas Torres will address the I think the excessive sentence aspect of the 3553 a factors which is basically substantively unreasonable so I will reserve the time that way you know rather than go into the specifics of the procedural history I think they just did just generally speaking we had a plea agreement where there was a set where there was agreement between the government and defendant between 97 121 months probation decided to accept that calculation and thought that a variance of 72 months was appropriate based on her assessment that a kidnapping and extortion happened about the attempted cooperation about the family background the court on its own after extensive hearing a fatical hearing extensive arguments over a number of different days ultimately found no minor role and yes navigation of enhancement to a level 38 plus 2 which is a 40 minus 3 is 37 which came out to a guideline range of 235 to 293 over twice as much as what the agreed-upon plea agreement was and ultimately sentenced mr. excuse me mr. colonist solace to 15 years in jail now it was a fatical hearing and it was kind of unusual because there was really initially there was no disagreement between the government in the defense but it came as a district courts questioning of whether or not the minor roles appropriate and whether or not the navigation should enhance it should be appropriate as well so at the fatical hearing special agent sand about from the DEA testified he testified about two in two general areas what is about the general operations of a DTO a drug trafficking organization and go fast boats and the other and the other was about his specific knowledge of his specific facts about this particular case and this particular defendant he spoke about again now generally the hierarchy of a DTO you had investors you had mariners or fishermen do is there anything in the record as with more details of the trip where was it going how many miles how long did the trip was the trip going to take I believe there's something in the record about a few days and they were traveling from Columbia it to I think initially to possibly I honestly I'm not sure at this point you're in the ocean for a number of days that is that is in the record to the United States not ultimately the United States but they were not going they were going to have a stop and rendezvous with another boat not in the United States and then from there that boat I believe was going to go to the United States the rendezvous was mid-ocean somewhere yes yes that's correct it seems to me that some degree of skill is required to drive your boat you know somewhere mid-ocean to rendezvous with another boat okay well I think that question I hate to do this but would be more appropriate to Mr. Schmidt okay because only because it was clear I don't think anybody disputes the fact that the testimony is that Mr. Schmidt's client was the quote captain and he was the one who was given the GPS system had the GPS and had the sat phone all right okay I'll ask him okay but I guess Mr. Schneider though your client though was there was an enhancement related to your client being a navigator though correct yes that's in the second half of my argument if I may okay okay I promise I'll get to it and if I don't I'll be more than happy to answer any questions you have okay but I will get to that but I do want to talk generally about what the the actual testimony of the Fatico about the hierarchy because I think it will relate later on to both the minor role and also to the the navigator enhancement so the hierarchy that agent Sandoval testified about talk about people giving orders taking orders people making decisions people asking permission to do things people who paid people who got paid people who had discretion people who had no discretion people who imposed punishment and people who got punished okay and he was very clear he said mariners were also fishermen were quote replaced instantly and I think a lawyer's term for that would be they are fungible right and I don't like to think that this activity was was fungible in terms of what the mariners were able to do so at the Fatico that was just generally now specifically agents said about who investigated this case and who actually spoke directly to Mr. Colonisalis said that Mr. Colonisalis did not load the narcotics on the boat did not decide quantity did not decide what route to take did not plan when to leave did not decide where to land or where to rendezvous in the sea did not recruit anyone and also the agent said that as part of this investigation there were wire taps which led to the ultimate seizure on the wire taps he never heard Mr. Colonisalis' voice he never heard Mr. Colonisalis' name being referenced by anyone else there is no information the record by agent Raymond Sandoval was very clear there's no information at all about what the defendant's specific role was on this boat there was no evidence at all that he was the navigator it was either speculation assumption presumption or inference however you want to characterize it there is testimony that the captain was the co-defendant Mr. Schmidt's client that he had the GPS and he had the sat phone and he in fact used the sat phone at that point and the third defendant who was not part of this appeal was allegedly the navigator there's no evidence at all that my client ever touched looked at used spoke about the GPS system there's no evidence at all that he touched talked on used listened to called the sat phone ever now Schneider you're you're now over the additional time I gave you I have oh I was having such a good time um you have I mean you can use some of your rebuttal time now or you can you can hold it until the end okay um if I can use if I can use one minute now just so I can get to the minor role part and then I'll go ahead if I may thank you so much okay um I want to be clear that we are not asking for a minimal role which is four points so if we're only asking for a minor role which is two points off and it's it's our position that under the totality of circumstances the district discretion the 2015 amendment which I think is critical here talk about the fact that it was more expansive use especially in narcotics cases of the minor role because previously it had been used too sparingly and inconsistently and if you look at if you look at 3b 1.2 virtually every one of the factors one through five factors specifically indicate that Mr. Colonial Solace was perfectly fit for the minor role he had no proprietary interest and the fact that he that the district court found he was was essential or indispensable doesn't matter it's just like he's an assembly what about getting paid forty five thousand dollars for each load that suggests that suggests that this was a position of some responsibility well no because number one at the federal hearing agent stand about actually in the government's brief at page eight they cited the fact that forty five thousand was was a typical amount for transporting narcotics by co-fans folks it wasn't like he got more or less okay that was a typical amount for that number one number two there's no evidence he ever got that amount that's just what was supposedly promised and number three it specifically says in the in the in 3b 1.2 a defendant who does not have a proprietary interest in the criminal activity and it was simply being paid to perform certain tasks should be considered for an adjustment under this guideline it doesn't say that if you get two thousand means you nothing if you get forty five thousand dollars means you have more important role if you think about how much a ton of cocaine is worth you talk about tens if not hundreds of millions of dollars forty five thousand dollars is nothing to the people who are running this organization it's nothing to the detail organizers nothing to the investors it's nothing and so the if the fact is it really should be a meaningless evaluation to determine how much he got thank you we'll hear from uh mr schmitt good morning your honor uh uh if i if your honor wishes me to briefly cover uh the issue of special skill uh it doesn't really require so much special skill as it is an understanding of the risk one is taking uh the i believe there's testimony that uh he was not the boat that was that he was meeting was not going to the united states it was going into some port in central america where uh mr salas torres and his brother were going to be dropped off and then uh take flown home afterwards and then the narcotics would follow its trip its normal trip up to the united states there are many ways that that it gets up there so they were riding uh uh in the open water a number of miles off of the shore that's not very different than riding outside of long island or the new jersey shore uh in a speed boat which lots of people do and unfortunately lots of people do it would probably be without sufficient training but to ride boat into in the water under normal conditions it's fairly simple to make sure that you're going into the waves and not along the waves i'm not trained but i have several several circuits have have considered the issue and have concluded that that um these words should be given their ordinary meaning there's no requirement of you know special nautical training or or a captain's license or anything i mean why why should we deviate from the holdings of those circuits i believe that there are two circuits both circuits including this one your honors uh has not make a decision i think it's it's it makes common sense a truck driver has a truck driver license but he doesn't get the two points all right even though he's driving he could be driving a truck in traffic in dangerous circumstances and snow and rain he doesn't get the points a speedboat driver is very similar this is not a pilot or a captain of a large ship that does require these skills but your clients are hired for their experiences fishermen were they not they're hired because they can handle a boat but that me but as the special agent testified they're a dime a dozen they're irreplaceable everybody every male just about who lives on the coast in these small towns which they usually get around by boat uh can handle a boat so it isn't a special skill it might be somebody who was raised in manhattan to have be a special skill to handle a boat but but where does it say that special skill is required either from case law um or the guidelines here well if if your honors do find that the normal dictionary definition uh applies it covers just about everybody it actually covers truck drivers as well uh then that's correct but if use the nautical terms which it should be used because we're talking about uh conduct in a nautical way if you use the nautical terms it clearly requires uh additional skills to uh to manage a boat i mean that's why like in new york harbor a pilot has special special skills to make it so the boat can enter into the harbor without colliding into anybody else and to use just in fearing as a basis of it i think is improper but my rest of my argument was based on uh the findings uh the 35 53 findings or lack of findings it was very clear that the district court judge uh found that the most aggravating factor and the most important factor was was that both of these these appellants were arrested and convicted before for the same conduct yes it is an aggravated factor the guidelines do consider it it is important but because it was so important to the court an examination of some of the other things and most importantly the uh allegations of the rest that caused them to return to doing this activity is very important and yes judges have discretion judges uh decide finding the fact for sentencing and there has to be clear error but the basis of the judge refusing to accept the defendants the government's and probation's findings of the existence of this duress as the result of the extortion and the was ridiculous we know that it was not ridiculous we know that it was not prosperous preposterous because the agent said he heard about these things happening before these do happen to people who have made all this money driving uh transporting the drugs and the fact that for my client this was his fourth trip after the extortion um his brother's second trip now as it was testified to and as the judge recognized the amount of money that these people make for this very dangerous uh trip both you know physically dangerous to them and legally dangerous to them uh was in the nature of forty thousand dollars and my client did dollars that he was going to get forty thousand dollars so for him to and he also was arrested and convicted so he knows what kind of punishment you get for him to go one time maybe two times three times four times right after he's made forty thousand eighty thousand one hundred and twenty thousand dollars to go more right there has to be another reason other than uh simply money simply greed and the explanation by him confirmed by his brother who held separately in jails until they did their proffers uh the fact that there was something reported in uh that time frame to the police but it wasn't reported uh exactly what happened because in columbia in those small towns the police are corrupt and in fact as indicated in uh my brief that one of the reasons why cooperation wasn't uh successful and that they couldn't confirm things originally was that the informant that the dea used back then was uh corrupt and it wasn't until they had a non-corrupt informant that they were able to corroborate everything our client said about the transportation system so the agent said our client uh were telling the truth probation accepted their version the government accepted their version uh at sentencing uh and the judge with no factual basis other than to him it sounded uh preposterous i found that uh there was uh no duress duress was not an issue for sentencing you have uh two minutes for rebuttal thank you yeah we'll hear from the government i may have pleased the court my name is sebastian sweat and i am an assistant united states attorney in the southern district of new york i represent the united states on appeal and i also represented the united states in the proceedings below i'd like to begin just by answering a question that came up uh during appellant's argument which was the location of the boat when it was apprehended so the psr which is docket number 59 paragraph 11 notes that the vessel was approximately 80 nautical miles southwest of panama at the time it was apprehended and then i'd also very quickly like to correct uh two things that were said during appellant's argument um first mr schneider said that the third co-defendant hey there renteria solis was the navigator of the boat um i i believe he just misspoke because there was undisputed uh evidence that he was the mechanic on the boat and um that is uh you can find that at salas's appendix page 284 and then the other thing i'd like to correct and i i'm happy to address the uh the duress argument in greater detail but it's not accurate to say that the government agreed that the duress that the extortion plot was credible this came up specifically in front of the district judge and the government uh acknowledged that this was something that was said in the course of the proffer the government said that this was not a focus of the government as it was primarily determining whether these defendants could provide useful information for further investigations and prosecution and the government said that the um that council had represented that there would be corroboration to support this extortion plot and all of this was on the record this is in the torres appendix pages 132 to 135 um candidly and this was a factor that the district court considered the corroboration uh provided at sentencing did not in fact support the the claim that there was an extortion plot there were letters that referenced robberies but there was nothing from the appellant's spouses from their children that specifically said that there was an extortion plot as laid out by the appellant the district court made the determination that that story was not credible and one of the factors that the district court relied on was agent sandoval's testimony that these mariners are in effect fungible the district court reasonably concluded that fungible mariners if they are in such ample supply don't need to be extorted because you could simply find another mariner to to do the same job um that finding was reasonable and and the the sentence imposed was substantively reasonable it was below the guidelines range as calculated by judge sullivan and and frankly it was it was primarily driven by this question of recidivism and judge sullivan's determination that that these defendants had not been deterred based on their prior conviction i'd like to now turn to the issue of the enhancement for acting as a pilot or navigator or co-pilot as uh as your honors have noted other circuits have looked more at the practical actions that individuals take on these boats as opposed to licensure or training and the government believes that that is appropriate uh standard as well i i think that there's very clear just just a question so that i just want to make sure i i i have how the guideline calculations work correctly so the party's originally calculated starting with mr colonias salas they the party has originally calculated a guideline range of 29 and for mr colonia salas who was in criminal history category two that original calculation resulted in the guideline range of 97 121 months correct that is correct and within that that was assuming that the minor enhancement implied but did not add a pilot enhancement right correct that is correct and the government judge sullivan raised at the first sentencing proceeding at which the government acknowledged that that was an oversight that was not a determination that these defendants did not fulfill those roles and with the and with adding the and the pilot enhancement results in two points so if you had had kept the them as minor participants but simply added the pilot enhancement you would have then had a guideline calculation of 31 and mr colonia salas would have been i guess a range of 121 to 151 your honor i don't have the table in front of me okay that's fine certainly correct that it would have been a two-point enhancement um had the government considered that um when offering the plea agreement it would have um it would have added that and it would have been a range it would have 31 and and then and but judge sullivan ultimately by by both adding the pilot enhancement but also dealing with the issue with respect to the minor role he then calculated a guideline range of 37 and mr colonia salas then had a range of 235 to 293 and then he went then went below that recalculated guideline range to come up with 180 months correct that is that is correct and i'll also note if there if if uh your if your honor has no questions at this time i will note that um even if uh even if judge sullivan had not imposed the pilot enhancement for mr colonia salas his uh his ultimate sentence still would have been below the guidelines range that would have resulted so without the pilot enhancement mr colonia salas would have faced a guidelines level of 35 and he would have faced a criminal history of two which would have resulted in a range of 188 to 235 and so even if the court determines that mr that judge sullivan's calculation of the pilot enhancement was in error it was clearly harmless judge sullivan went below what would have been the guidelines range even if that enhancement had been applied well he might it is possible but ultimately given that the standard here is a preponderance at the district court level and that on review the question is clear error there's no indication that judge sullivan committed clear error in in making that determination i i would like to the mr schneider in his argument said that there was no evidence that um that the special agent special agent sandoval said that there were roles on these boats that that he had observed in his experience working these kinds of cases the roles are captain sort of the person with ultimate authority mechanic uh who is responsible for sort of keeping the engines running and then he called the third role a navigator it wasn't clearly defined at the batik though but if you look at the record there's sort of an indication that it's both the person who obviously navigates the boat but also someone who acts as sort of a co-pilot and second in command and i would point to the torah's appendix at page 221 and 231 to 232 i thought they took turns steering just because of the duration of the trip is that right i'm sorry i thought they also both took turns steering uh the boat just due to the how long the trip was special agent sandoval certainly testified to that and that was something that judge sullivan considered relevant when he applied the enhancement for mr cologne his solace he said in effect this is a long trip people have to relieve each other you're traveling at night and basically i believe that he was in that boat to pilot it and to navigate it and so while there's there's no um there's no document or nowhere in the record where special agent sandoval specifically says this is how i know that cologne has solace was the navigator i think judge sullivan took a more holistic view of his purpose in the boat the money he was paid as part of this trip and and the fact that there really were no spare individuals on these trips there were no you know uh there were no cooks there were no pleasure cruisers everyone there had a job that said and and and and but but ultimately the pilot enhancement is sort of based on this sort of ordinary definition of someone being a piloted navigator which has been adopted certainly by the first circuit and the ninth circuit um it's i mean that the finding there is really less related to the witness itself it's really more what the what is is known about what the defendants had in terms of their role because the witness themselves seem to disclaim really having much knowledge about navigating a boat so it's really relying on their understanding of what they were doing on the boat i think that's right i think judge sullivan drew um inferences from the way that these trips work and and the fact that in this particular case the individuals on the boat certainly two of them fit into the roles that special agent sandoval recognized from his time in the dea and so judge sullivan inferred that mr cologne his solace also fit into one of those similar roles which was what the agent called navigator and what i think is sort of properly considered a navigator or co-pilot and i think i guess i guess i'm just i'm just just pressing on that point because i i mean it seems to be the the defendants don't seem to be denying that there were certain things that they did i mean i guess i'm less i'm less troubled about any any this any uh inference that was drawn based on what was the activity on the boat but it seems like relying on the witness who says i've never navigated a boat myself or driven or been in the water i really don't know um it doesn't seem like that's really a good basis even though he talked about his da experience whether or not he really sort of laid enough of a foundation for one to draw that evidence you know could be more questionable but but it seems that certainly in the uh the initial reference there had been a reference to one of the defendants being captain and then the other one playing a role the district judge certainly could draw an inference that that was sufficient to meet the definition for the enhancement yeah so i i don't think that special agent sandoval was testifying about the skill required or um or even what was done on the boat based on his own experience either in the navy or in the dea certainly he wasn't basing it on his experience piloting boats i think he testified that he had interviewed uh dozens if not hundreds of these individuals he had talked about the trip and so he had a general understanding that mariners that fishermen were recruited because of their skill they were paid a certain amount of money to exercise that skill and and judge sullivan found by a preponderance that both mr salas torres and mr solon colón has solace i did in fact act uh in those uh act according to the definitions set forth in the guideline pilot and co-pilot navigator operations officer and and i would note um go ahead your honor i'm sorry i would also note that both with respect to the pilot enhancement and with respect to the minor role adjustment um judge sullivan uh reached different conclusions with respect to the third co-defendant mr hey their entry is solis mr solis was the mechanic on the boat that was not disputed and judge sullivan ultimately concluded that he was um he was not acting as a pilot co-pilot or navigator and the citation for that is docket 119 which is the sentencing transcript for mr hater interior solis judge sullivan also concluded that mr solis uh warranted a minor role adjustment and he pointed out some differences between the third co-defendant and the two appellants namely there was no evidence he trips before he stood to make less money his role was that of mechanic which is someone who tends to the engines and so again when when assessing whether judge sullivan's factual conclusions were clearly erroneous i think it's hard to say that he he wasn't carefully considering the facts of this case and he wasn't drawing distinctions not only between mr colón has solace and mr solis torres but between the two of them who had done this before who had a different role on the boat and the third co-defendant mr renteria solis on the on the minor role participation i i guess what it it does sound though that what judge sullivan was doing was basing the rejection of those deductions on their past participation and to some extent the quantity of drugs because he wasn't comparing their role to the the enterprise as a whole he didn't there's no reference to the kind of discretion they had there's no discussion about what their knowledge was the entire operation so there were there are sort of some of the factors that are listed in terms of the guidelines as amended in 2015 that aren't really addressed so that it is it your view that that wasn't necessary it's our view that that there were factors that could have argued that could have warranted a minor role adjustment and in fact that was the position the government took below but on appeal the question is whether the court's conclusion was clearly erroneous and certainly judge sullivan focused on particular factors that he found most relevant namely the fact that they stood to benefit financially in in a significant manner the fact that they had done this before the fact that they knew that they were transporting such a large quantity of cocaine and there was there was back and forth below about sort of how to define the scope of the organization in this case as to how far back it stretches and how far forward it stretches but judge sullivan sort of focusing on the transportation of these narcotics found that the two appellants were not did not have a minor role they had some authority they had some discretion they also were more aware and what discretion did they have in terms of how they undertook the activity i think judge sullivan's conclusion was that they had discretion when they were at sea about when to jettison you know uh how to undertake the journey i don't think it was a lot of discretion but i think judge sullivan rejected the argument from uh council below that they were sort of automatons who basically plugged in an or discretion at all so well i guess what i guess one thing is is that i'm trying to make sure not to conflate what seems to me might be an appropriate analysis with respect to the pilot or navigated enhancement from the question of minor role which may be a separate inquiry and that inquiry really being trying to figure out is there something or are they substantially less culpable than sort of the co-participants at hand and it would seem either the co-participants or hand aren't simply the people on the boat but who's involved in the operation because my understanding is is that none of the none of these two defendants had any role in the drugs or quantity of drugs that were put on the boat where they were supposed to go with the boat um they also weren't picked up on any of the wire taps so i and so i guess the question is is are those things analysis that the district court has to do and i guess your that even if he didn't do that that's not clear error i i don't think my now i don't think i'm saying that he didn't do that those questions were were litigated and they were um discussed at length in front of the judge um whether he specifically addressed them in making his rulings i think it's hard to say that they were absent from his consideration um because clearly there there was a lot of back and forth about other members of the the dto uh what roles and what discretion these the appellants had and judge sullivan ultimately considered all of the factors did a very fact-intensive inquiry and determined that they did not qualify for the minor role unlike their co-defendant who did i see that my time is up unless there are any other questions i will rest on our submissions thank you mr schneider you have one minute for rebuttal i thought i had two use up one of them okay okay okay i'm sorry i'm sorry i'll give you two it's fine go ahead when you're having such a good time time flies okay anyway your honor a couple of things number one i think the government is is using the word holistic view he said that the judge took a holistic view of this of the navigator i think the real word is speculating because there was really nothing in the record about about some of the things that the judge down below found and i do want to apologize the government is right i did misspeak uh i did mean to say mechanic not navigator when i was returning to the third quarter so i apologize for that um now my view is very simple the other circuits talked about the general english dictionary view and i think it's time for this circuit because nobody else has ever in this circuit has ever addressed this issue it's not in any reported decision it's not in any decision i've seen either unreported i think it's time for this circuit to use common sense and i have to say be brave and be bold because using the english normal very much a definition doesn't make sense using the navigator's definition the navigator nautical dictionary that makes sense and rather than repeat it i think the best way to say it it's how the descent said it in the trinidad decision which is in our brief 32 to 34 of our brief that decision makes so much sense because it what happens there is that if you use the regular definition then there's no special skill required well that means anybody who drives a truck is enhancing that means even the mechanic because according to the testimony every generally speaking everybody took turns mechanic captain navigator right so that means the mechanic even though judge judge down below didn't give the mechanic an enhanced role he could have under this logic and i tell you know why he didn't because the district court judge was very very focused and upset about the fact that these two defendants had done this before and did it again and that's why he viewed the third code defendant differently than these two defendants not based on the facts in the record but based on his generally being upset and you saw it it's in our brief how many times he talked about about them being had done this before even before they pled guilty so that's that's important uh because if somebody were to drive a car to a location under this theory of the under all this the fifth the what the first fifth seventh and ninth circuits that person should get the enhancement too and that does not make sense um it yes it's clear that the angel santo testified that the that the people take turns with steering because it's a long trip i believe uh judge park asked about that okay so yes they took turn but that doesn't mean that you are the one or that my client is the one who did it when it's time to rendezvous what if the co-defendant or one of them goes to the bathroom and he says just stay here and look does he become a captain does he become a navigator how fun is it to look at a gps and make sure you're going straight that's what it's about okay so just to say that that and i agree there is evidence in the record that my client occasionally touched the steering wheel he used the steering wheel okay not that he was there for the rendezvous not that he was there that was in any way involved in the gps not that he used a satellite phone not that he had discretion but that there was a period of time that he touched the steering wheel that's all he did that's all he did it's all the record says and i think thank you we'll hear from mr schmidt thank you your honor i appreciate it your honor very briefly uh one none of those people had any type of discretion or authority they did not they actually had a call when the boats when the planes were coming in they actually had to make a satellite call to see if they're allowed to dump uh the drugs there was zero discretion zero authority now the government said that they did not uh necessarily accept the uh duress argument in our uh sentencing submission we quoted uh what is found in the appendix at 82 and 83 that the government cannot independently corroborate details regarding the defendant's hardships it generally corrects the information the defendants provided the government believes that defendants faced extreme choices in part that led them to re-offend that is a statement that they did believe that they had this pressure on them and in the government's sentencing submission again uh they basically said that they in multiple proper sessions freely gave all information he had and his historical involvement willingness to cooperate that means they they believed him and they didn't believe him they wouldn't accept it as to the records of the robbery that the family sent up what the government is asking and what the what judge uh the sentencing judge is asking is that our client was supposed to go to the police and explain to him that uh we my my family was kidnapped and threatened and i had to go to the chair who was the head of the drug trafficking organization to get the money to pay them off so my family would not get hurt and now i owed money to the drug trafficking organization and i'm going to go on the boats to pay him off because otherwise my family will be in the worst shape as they were before it was not the chair who kidnapped him the chair utilized gave him the marinas because it was easy for them and they didn't care they got caught they just wanted them to go so so there was was corroboration but in more important than just the corroboration there was absolutely nothing to challenge what they said and if anything even the agent said supported their position thank you thank you both uh thank you to the government the court will reserve decision thank you your honor